CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
ERICA CHOI (Bar No. 302351)
(E-Mail: Erica_Choi@fd.org)
SHANNON COIT (Bar No. 298694)
(E-Mail: Shannon_Coit@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
ASHLEIGH BROWN

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CYNTHIA RAYGOZA<br>ASHLEIGH BROWN<br>SANDRA SAMAME,<br><br>Defendant. | Case No. 2:25-CR-780-SVW-2<br><br>**DEFENDANT ASHLEIGH BROWN'S MOTION TO DISMISS COUNT 2 OF FIRST SUPERSEDING INDICTMENT**<br><br>**Hearing: February 9, 2026** |

The defendant Ashleigh Brown, by and through her attorneys Deputy Federal Public Defenders Erica Choi and Shannon Coit, hereby submits this Motion to Dismiss Count 2. Ms. Brown incorporates the facts and arguments raised in her principal Motion to Dismiss Indictment and Reply (ECF 93 and 102), joins Cynthia Raygoza's Motion to Dismiss Count 2 (ECF 114), and presents additional grounds for dismissal herein.

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................................1

II. OFFENSE CHARGED ..........................................................................................1

    A.    Legislative History .......................................................................................2

III. ARGUMENT .........................................................................................................3

    A.    Count Two Fails to Allege an Offense. ........................................................3

        1.    Count Two fails to allege a "course of conduct" of cyberstalking. ...............................................................................3

            a.    The plain meaning of "pattern of conduct" is repeated acts occurring over a period of time, not an isolated event occurring on one day. ...........................................4

            b.    Count Two fails to allege "2 or more acts" involving the use of interstate commerce facilities. .......................................5

    B.    Count Two is Unconstitutional as Applied to this Case ..............................6

IV. CONCLUSION ...................................................................................................10

## I. INTRODUCTION

After Ms. Brown filed a Motion to Dismiss the Indictment, ECF 93, the government sought to dismiss the substantive charge for "doxxing" under Count Two (18 U.S.C. § 119(a)(2)). Then, the government filed a superseding indictment adding a new Count Two: cyberstalking in violation of 18 U.S.C. § 2261A(2)(B).

The Court should dismiss Count Two because it fails to allege an offense. The cyberstalking statute requires a "course of conduct," defined as a "pattern of conduct composed of 2 or more acts, evidencing a continuity of purpose" using interstate commerce facilities, which is not present here. Count Two alleges one single episode, where three defendants recorded an ICE officer in public for approximately 45 minutes. After that, there as no contact or communication. This is no "course of conduct" as required for cyberstalking.

Count Two must also be dismissed under the First Amendment because it is unconstitutional as applied to this case. "[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *Ford v. City of Yakima*, 706 F.3d 1188, 1192 (9th Cir. 2013) (citing *City of Houston v. Hill,* 482 U.S. 451, 461 (1987)). "The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Id.* at 462-63. Courts have found 18 U.S.C. § 2261A unconstitutional as applied to speech directed towards public figures on matters of public concern. As explained herein, the cyberstalking statute violates the First Amendment as applied to this case.

For these reasons, the Court should dismiss Count Two.

## II. OFFENSE CHARGED

The government has added a new count for cyberstalking in violation of 18 USC § 2261A(2)(B). As charged, Count Two criminalizes using "any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate commerce" to "engage in a

1

course of conduct" intended to "harass and intimidate" Rogelio Huitzilin in a matter that would reasonably be expected to cause substantial emotional distress to Huitzilin, his immediate family members, and his spouse. ECF 103.

## A. Legislative History

18 U.S.C. § 2261A(2)(B) states as follows:

> Whoever— . . .
>
> (2) with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person, uses the mail, any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct that . . .
>
> (B) causes, attempts to cause or would be reasonably expected to cause substantial emotional distress to a person described in clause (i), (ii), or (iii) of paragraph (1)(A), . . .

18 U.S.C. § 2261A(2)(B).

Commonly referred to as the cyberstalking statute, this statute arises out of Congress's passage in 1994 of the Violence Against Women Act ("VAWA"). A major portion of VAWA was to address gender-motivated crimes such as domestic violence, stalking, and sexual assault. The Act was also instrumental in funding the National Domestic Violence Hotline and in allocating resources to state and local governments to provide essential training to law enforcement and advocates regarding domestic violence and sexual assault.[1] The government is now using one of the laws that arose out of VAWA to prosecute three protestors who filmed an ICE officer in public for less than one hour.

---

[1] RAINN, How VAWA Protects Victims (Mar. 27, 2013), *available at* http://www.rainn.org/news/how-vawaprotects-victims

### III. ARGUMENT

A court must dismiss a charge if it "fail[s] to state an offense." Fed. R. Crim. Pr. 12(b)(3)(B). A charge fails to state an offense when the conduct alleged in the indictment is not a crime and/or when the Constitution precludes the prosecution. Where a constitutional challenge to a charge is made on the grounds that the charge conflicts with the First Amendment's guarantees of free thought, belief, and expression, the trial court should subject the legal sufficiency of the indictment to exacting scrutiny.

Here, the Court must dismiss Count Two because (1) it does not allege an offense, and (2) it is unconstitutional as applied to this case.

### A. Count Two Fails to Allege an Offense.

Count Two fails to allege an offense, and should be dismissed, for two reasons. First, the statute requires a "course of conduct," defined as a "pattern of conduct composed of 2 or more acts, evidencing a continuity of purpose." 18 U.S.C. § 2266. Count Two does not describe a "pattern of conduct." It describes one brief episode on one date, not a "pattern of conduct" and certainly nothing "evidencing a continuity of purpose." This is not a "course of conduct" as required by the cyberstalking statute.

Second, the cyberstalking statute requires 2 or more acts involving the use of interstate commerce facilities. The government has not, and cannot, allege 2 or more separate acts using the Internet. For these reasons, Count Two fails to allege a crime and must be dismissed.

#### 1. Count Two fails to allege a "course of conduct" of cyberstalking.

Section 2261A(2)(B) only applies to "a course of conduct." The statute defines "course of conduct" to mean "a pattern of conduct composed of 2 or more acts, evidencing a continuity of purpose." 18 U.S.C. § 2266(2). This definition "excludes isolated statements," and focuses on "persistent behavior." *United States v. Jubert*, 139 F.4th 484, 494 (5th Cir. 2025). Consistent with this focus, courts have held a single act cannot be subdivided to fit the statute's multiple-act requirement. For example, in *United States v. Bell*, the Ninth Circuit rejected the government's attempt to subdivide

3

1  the actions of preparing to send a fax and then sending the fax into separate "acts."
2  *United States v. Bell*, 303 F.3d 1187, 1192 (9th Cir. 2002).

        **a.    The plain meaning of "pattern of conduct" is repeated acts occurring over a period of time, not an isolated event occurring on one day.**

Here, the statutory definition of "course of conduct" contains three distinct perquisites. There must be (1) "a pattern of conduct," that is (2) "composed of 2 or more acts, and (3) the pattern must "evidenc[e] a continuity of purpose." 18 U.S.C. § 2266(2). The allegations in the Count Two fall well short of satisfying any of these requirements.

"The interpretation of a statutory provision must begin with the plain meaning of its language." *United States v. Flores*, 729 F.3d 910, 914 (9th Cir. 2013) (internal quotation marks omitted). "To determine plain meaning, '[courts] examine not only the specific provision at issue, but also the structure of the statute as a whole, including its object and policy.'" *United States v. Lillard*, 935 F.3d 827, 833 (9th Cir. 2019).

The Court need only look at dictionary definitions of "pattern" for its plain meaning. Merriam-Webster defines "pattern" as "**frequent** or **widespread** incidence." *Pattern*, Merriam-Webster, https://www.merriam-webster.com/dictionary/pattern (last visited February 2, 2026) (emphasis added). The Britannica Dictionary defines "pattern" as "something that happens in a **regular and repeated** way." *Pattern*, The Brittanica Dictionary, https://www.britannica.com/dictionary/pattern (last visited Feb. 2, 2026) (emphasis added). The term "continuity" is similar. It is defined as "the quality of something that does not stop or change **as time passes.**" *Continuity*, The Brittanica Dictionary, https://www.britannica.com/dictionary/continuity (last visited Feb. 2, 2026) (emphasis added).

Count Two fails to allege a "pattern of conduct," much less one evidencing a "continuity if purpose." The government alleges that on August 28, 2025, defendants followed Huitzilin to his personal residence while live-streaming, disclosed an address

4

near his home to viewers on social media, and then "yelled" at Huitzilin and his wife. *See* ECF 103 at 4-6. The government attempts to break a single episode into 11 separate acts (subparagraphs a-k). These were not "frequent or widespread" acts that evidence a "continuity of purpose" within the meaning of 18 USC § 2261A. This was one isolated event. As the cases cited in Ms. Raygoza's brief explain, a "pattern" is established by repeated conduct over a period of time. *See* ECF 114 at 8-10. Filming a law enforcement officer in public for less than one hour is not a "pattern of conduct" of cyberstalking.

In short, Count Two alleges one single event. As the Ninth Circuit explained in *Bell*, preparing to send a fax and then sending a fax are not separate "acts." 303 F.3d at 1192. Likewise, here, defendants recorded a federal officer in public. This event, all of which took place in public in a 45-minute period, was an isolated instance and cannot be subdivided into eleven acts, as the government attempts in Count Two. Because Count Two fails to allege a "pattern of conduct" as required by section 2261A, it must be dismissed.

### b.   Count Two fails to allege "2 or more acts" involving the use of interstate commerce facilities.

Count Two also fails to allege multiple acts. The cyberstalking statute requires "2 or more acts" that each involve the use of interstate commerce facilities. "Specifically, the defendant must **use** 'the mail, any interactive computer service or electronic communication service or [ ]system of interstate commerce, or any other facility of interstate or foreign commerce' **at least twice**." *Jubert*, 139 F.4th at 494 (emphasis added).

The Ninth Circuit's decision in *Bell*. There, the jury instruction on cyberstalking failed to include the "course of conduct" element charged in the offense. 303 F.3d at 1191. On appeal, "Bell's precise argument [was] that the statute requires proof of use of interstate commerce facilities on more than one occasion." *Id.* The Ninth Circuit "agree[d] that the omission of the course of conduct element from the [jury] instruction

5

. . . was error," because "[t]he phrase is clearly present in the statute and is an element of the offense." *Id.* at 1192. By "agree[ing]" with the defendant, the Ninth Circuit agreed the "course of conduct" requires proof of use of 2 or more acts involving the use of interstate commerce facilities. *See id.*

Here, the single live-stream described in Count Two does not constitute "2 or more acts" involving interstate commerce facilities. The Court should dismiss on this basis as well.

### B.   Count Two is Unconstitutional as Applied to this Case

The First Amendment states in part, "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. "Even where emotional distress is reasonably expected to result, the First Amendment prohibits Congress from punishing political speech intended to harass or intimidate in the broad senses of those words." *United States v. Sryniawski*, 48 F.4th 583, 587 (8th Cir. 2022).

The mens rea element, as charged in Count Two, requires that defendants acted with the intent to "harass" or "intimidate." 18 U.S.C. § 2261A(2). "If these terms are construed in their broadest sense, however, they would infringe on rights protected by the First Amendment." *Sryniawski,* 48 F.4th at 587. That is because "'harass' can mean 'to vex, trouble, or annoy continually or chronically," *id.* (quoting Webster's Third New Int'l Dict. Of English Lang. Unab. 1031 (1993)), while "'intimidate' can mean 'to make timid or fearful,'" *id.* (quoting *Webster's Third New Int'l dict. Of English Lang. Unab.* 1184 (2002)). The First Amendment, however, "protects a variety of speech that is intended to trouble or annoy, or to make timid or fearful" (collecting Supreme Court cases). Thus, intent to "harass" and "intimidate" must be construed in a manner that does not violate the First Amendment.

Criminal "harassment" is unprotected where it "constitutes true threats or speech that is integral to proscribable criminal conduct." *United States v. Ackell*, 907 F.3d 67, 76 (1st Cir. 2018); *see United States v. Stevens*, 559 U.S. 460, 468 (2010). "Intimidation in the constitutionally proscribable sense of the word is a type of true

threat," where the speaker intends to place the victim "in fear of bodily harm or death." *Virginia v. Black*, 538 U.S. 343, 360 (2003). The speech alleged in Count Two did not amount to true threats, as defined by First Amendment law. The speech was vexing and annoying, and may have troubled Officer Huitzilin, but is plainly protected by the First Amendment.

      Two district courts have found the cyberstalking statute unconstitutional as applied to speech directed toward public figures on matters of public concern. The Court should apply the reasoning of both cases here.

      In *United States v. Cassidy,* the defendant befriended a well-known Buddhist monk (A.Z.) and expressed an interest in meeting with her. 814 F. Supp. 2d 574, 578 (D. Md. 2011). While riding in a car together to a retreat, the defendant proposed to A.Z., and she declined; he also asked her to pretend they were married. *Id.* Later, the defendant used Twitter and an online blog to post derogatory statements about A.Z., causing her substantial emotional distress. *Id.* The defendant's Tweets and blog included statements like:

- "(A.Z.) is a demonic force who tries to destroy Buddhism"
- "(A.Z.)'s livelihood:" uneducated bitch makes her living off suckers who need to believe in fairy tales."
- "This would be funny if it weren't so tragic. Back a couple of months ago, (A.Z.) (she calls herself "(A.Z.)," and claims she is a "living Buddha") called police near her Barnesville, Maryland home to report that, a "team of intruders" were observed "stalking the perimeter." Nothing wrong with that—can't be too careful these days."

*Id.* at 579 n.9, 589.

      The *Cassidy* court noted that the Supreme Court had "consistently classified emotionally distressing or outrageous speech as protected, especially where that speech touches on matters of political, religious or public concern. *Id.* at 582. It found that "although in bad taste," the defendant's Tweets and blog posts "challenged [the victim's] character and qualifications as a religious leader," which was "squarely . . .

7

1  protected speech: anonymous, uncomfortable Internet speech addressing religious
2  matters." *Id.* at 583.
3       The *Cassidy* court also found that the anti-stalking statute created a content-
4  based restriction on speech that failed strict scrutiny. In that case, the government had
5  targeted speech, the defendants' Tweets and blog posts, which the victim was free to
6  ignore. *Id.* at 585. The court concluded that regardless, it did not further an important
7  state interest to apply the statute to "individuals engaging in political debates or
8  critiques of religious leaders." *Id.* at 586-87.
9       In *United States v. Cook*, 472 F. Supp. 3d 326 (N.D. Miss. 2020), a man who had
10 been prosecuted by state authorities made several Facebook posts criticizing his
11 prosecution. These posts included, among other things, the address of a police officer,
12 statements that he was going to come after the people who prosecuted him, and a post
13 about the prosecutor that said "God willing I'm going to take them out." *Id.* at 329-30.
14      The court found that the statements were protected because they did not
15 constitute "true threats." *Cook*, 472 F. Supp at 335. It explained that the statement "God
16 willing I'm going to take them out," was not specific enough to be a true threat. *Id.* And
17 it found that sharing someone's personal information, "while potentially offensive and
18 disagreeable, does not rise to the level of a true threat." *Id.*
19      The court also found that the Facebook posts were protected because they
20 discussed matters of public concern. As it explained, "speech complaining of
21 misconduct within [a public entity] is speech addressing a matter of public concern."
22 472 F. Supp. at 336. It found that the defendant had a constitutional right to post what
23 he viewed was information exposing misconduct by state officers, judges, and
24 prosecutors. *Id.*
25      For the same reasons as in *Cassidy* and *Cook*, the Court should dismiss Count
26 Two as applied to this case. Police officers are public figures. *Rattray v. City of Nat'l*
27 *City*, 51 F.3d 793, 800 (9th Cir. 1994). And clearly, the conduct of ICE officers is a
28 matter of public concern. The defendants engaged in conduct protected by the First

8

Amendment. They filmed someone who appeared to be a public official who was breaking the law in public by driving without a license plate, which is a matter of public interest. *See Project Veritas v. Schmidt*, 125 F.4th 929, 959 (9th Cir. 2025) (en banc) (discussing "a consensus in federal case law that the First Amendment protects the right to film police officers in public"). They then filmed him confronting them in a threatening manner--also of public interest. And they filmed their interactions with Baldwin Hills PD--also a matter of public interest.

Just like their conduct, all the defendants' statements are protected by the First Amendment. The statements—that Officer Huitzilin "is ICE," "la migra lives here," calling him a "piece of shit," "fucking idiot," "traitor," and "race traitor"—is political speech touching on a matter of public concern.[2] The speech does not rise to the level of a true threat. As in *Cook*, defendants had a constitutional right to post information exposing misconduct by an ICE officer. And as in *Cassidy*, defendants' statements

---

[2] As explained in other filings, the words "come on down," identified in Count Two, misrepresents what was said. Ms. Brown's full statement was "come on down to support the people," in reference to Baldwin Park Police Officers, not about Huitzilin.

Likewise, defendant Raygoza's statement, "you know I'll fucking pop you bitch," in context, was no threat.

Officer Huitzilin physically blocked Brown's vehicle from leaving, Raygoza repeatedly told him to move: "Get out of the way. Get out of the fucking way, you weirdo. Get out of the way. Get the fuck out of the way. Move, bitch, Get the fuck out of the way, puto. Get the fuck out of the way before I throw this coffee in your face. Get the fuck out of our way, bitch." She was holding an iced coffee.

Officer Huitzilin taunted her to, "Do it! Throw it!"

Raygoza responded, "I'm not throwing shit. What do you think, I'm stupid?"

Huitzilin continued to say, "Throw it. Throw it. Do it."

Raygoza then accused Huitzilin of hitting Samame with his car. Huitzilin told Raygoza to "shut the fuck up." After that, Raygoza said, "You know I'll pop you bitch, you know I will." Huitzilin continued to challenge her to, "Do it. Do it."

USAO 24 at 10:38-11:50.

In context, Raygoza's statement is about throwing her iced coffee. Because the government lacks evidence, they have cherry-picked statements out of context to charge Count Two.

9

relate to ICE and the ICE officer's conduct in the community, and are a matter of public concern protected by the First Amendment.

## IV. CONCLUSION

For these reasons, the Court should dismiss Count Two of the Superseding Indictment.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: February 2, 2026          By  */s/ Erica Choi*
                                 ERICA CHOI
                                 SHANNON COIT
                                 Deputy Federal Public Defenders
                                 Attorneys for ASHLEIGH BROWN