# EXHIBIT P

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
(WESTERN DIVISION - LOS ANGELES)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO: 2:25-cr-00780-SVW |
| | ) | |
| Plaintiff, | ) | CRIMINAL |
| | ) | |
| vs. | ) | Los Angeles, California |
| | ) | |
| CYNTHIA RAYGOZA, | ) | Friday, February 27, 2026 |
| ASHLEIGH BROWN, | ) | |
| SANDRA CARMONA SAMANE, | ) | (9:42 a.m. to 10:13 a.m.) |
| | ) | (1:22 p.m. to  1:27 p.m.) |
| Defendants. | ) | (6:06 p.m. to  6:17 p.m.) |

JURY TRIAL - DAY 4 (VERDICT)

BEFORE THE HONORABLE STEPHEN V. WILSON,
UNITED STATES DISTRICT JUDGE

APPEARANCES:                SEE PAGE 2

Court Reporter:             Recorded; CourtSmart

Courtroom Deputy:           Daniel Tamayo

Transcribed by:             Exceptional Reporting Services, Inc.
                            20079 Stone Oak Pkwy. Suite 1105-237
                            San Antonio, TX 78258
                            361 949-2988

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

EXCEPTIONAL REPORTING SERVICES, INC

2

**APPEARANCES:**

| | |
|---|---|
| For Plaintiff: | AUSA CLIFFORD MPARE |
| | AUSA LAUREN E. BORDER |
| | U.S. Attorney's Office |
| | 312 N. Spring St., 15th Floor |
| | Los Angeles, CA 90012 |
| | |
| For Cynthia Raygoza: | GREGORY NICOLAYSEN, ESQ. |
| | Gregory Nicolaysen Law Offices |
| | 27240 Turnberry Lane |
| | Suite 200 |
| | Valencia, CA 91355 |
| | 818-970-7247 |
| | |
| For Ashleigh Brown: | DFPD ERICA CHOI |
| | DFPD SHANNON M. COIT |
| | Federal Public Defender's Office |
| | 321 East 2nd Street |
| | Los Angeles, CA 90012 |
| | 213-894-2854 |
| | |
| For Sandra Carmona Samane: | ROBERT M. BERNSTEIN, ESQ. |
| | Law Offices of Robert M. Bernstein |
| | 9465 Wilshire Boulevard |
| | Suite 300 |
| | Beverly Hills, CA 90212 |
| | 310-477-1480 |

EXHIBIT P - Page 2 of 26

3

**Los Angeles, California; Friday, February 27, 2026; 9:42 a.m.**

**(Call to Order)**

**(Outside the presence of the jury)**

**THE COURT:**  Present with counsel and the parties.  We received note Number 1 from the jury.  They request additional copies of -- additional copies of definitions of counts and charges.  Wait a second.  I have two notes here.  Is this -- oh, is this the only one note?

**THE CLERK:**  Yeah, that's the response.

**THE COURT:**  Oh, okay.

**THE CLERK:**  They put the -- name on it but they're asking for the charging document and --

**THE COURT:**  Okay.  Additional copies of definitions of counts and charges.  I guess they've seen indictment.  Document 103, page 1 through 6; pages ID Number 624 to 629; additional copies of closing jury instructions.  I can't read the writing.  Anyone read the writing of the foreperson?

**MR. BERNSTEIN:**  We haven't seen --

**MR. NICOLAYSEN:**  We don't have a copy yet.  So we don't have copies of the note, Your Honor.

**THE COURT:**  Oh, oh, oh, here.  I want you to see the note, yeah.  I thought you had seen the note.  Both sides could look at it.

**(Pause; counsel conferring)**

Can I see the note, Daniel.

**EXCEPTIONAL REPORTING SERVICES, INC**

4

In any event, I can now read the name of -- the foreman's Juror Number 7, Atijera.  I'm not going to give them additional copies of the jury instructions.  I'm not going to give them additional copies of the indictment.  I think that's a bad practice.  And with regard to Document 103 and so forth, I don't know what that -- those documents are.  I have no objection.  Why -- why they're requesting something -- are they requesting something that's not in evidence?

MR. MPARE:  No, Your Honor.  They're just citing to the indictment.  That's the header at the top of the document.

THE COURT:  Oh, okay.  So I'll respond by the Court will not provide any additional copies or instructions.

MR. MPARE:  Understood.

MS. COIT:  Your Honor, we want to raise an issue.  The superseding indictment that was sent back to them, actually includes statements accredited to our clients that is not in evidence.  So we request the indictment actually be removed from them, the jury room.

MR. NICOLAYSEN:  Join, Your Honor.  There are listed facts in -- especially in the stalking count that are not in the trial record so we would ask that the jury only rely on its --

THE COURT:  Well then I mean is that -- do you agree with that?

MS. BORDER:  I believe there might be a comment about

let's stalk some that didn't make it in, Your Honor, on the stalking count but Your Honor has instructed them that the indictment is not evidence.  And I believe perhaps maybe the solution to that would be to re-instruct them that the indictment is not evidence.

**MR. NICOLAYSEN:**  May we have a redacted indictment; that is, the elements that are --

**THE COURT:**  What overt act is it?  I'll just tell them to --

**MS. BORDER:**  May I have a second, Your Honor?

**THE COURT:**  Yes.

**MS. COIT:**  Yeah, we have several.  I need to listen to --

**THE COURT:**  Just tell me what the overt act is.

**MR. BERNSTEIN:**  Your Honor, may we get a hard copy printed out so that we can --

**THE COURT:**  One hard copy of what?

**MR. BERNSTEIN:**  Of the indictment printed out.  I don't have a hard copy printed out with me.

**THE COURT:**  I'll give you one if we have one.  Do we have a copy?

**MS. COIT:**  Well it says "Overt Act Number 1," Your Honor.  Talking about the defendants followed an employee, a federal agent in one of them.  And it talks about the federal agent being followed to the personal -- from his personal

6

residence.  It was pretty -- it was clear from the evidence that they don't know that they're following a single federal agent to his personal residence.

THE COURT:  Well it was a conspiracy charge so the way the indictment reads it was their intent.  So what is the overt act that is in question?

MS. COIT:  There's also Overt Act Number 2.  It says that the defendants posted a live video going from the building to his personal residence.  That's not the video was posted.  It stops when he just gets off the freeway.  And Overt Act Number 3 it says, "Defendants provided directions to his personal residence."

THE COURT:  Well I will tell them again that the indictment is not evidence and should not be looked at as evidence if --

MS. COIT:  I think there's another statement from Ms. Brown and I think it's 2-F on page 5 that says, "There's an ICE agent.  This is where he lives apparently and now the entire block knows they have an ICE agent living on their street."  That's mostly livestreaming when she is -- I believe this is like when she's with Officer Goble.  That did not come into evidence.  I have to check one more video but maybe the government correct me.

THE COURT:  I mean at the time there was an objection to having the indictment sent to the jury.  As a matter of

7

practice, the indictment is sent to the jury and the indictment is the indictment. The government doesn't have to prove everything they said in the indictment. It's up to the jury to determine from the evidence what was proven and what wasn't. So I don't see the point. There's always something in an indictment that wasn't proven at trial. The government doesn't have to prove everything in the indictment.

MS. COIT: Your Honor, I think that's the point. The government does not need to prove anything in the indictment so the jurors do not need the indictment. It's clear they're looking at it and focused on it and that's highly prejudicial.

THE COURT: I don't know what is clear or not. It seems to me that they're asking for additional copies of instructions and the indictment.

With regard -- let me just ask you. One second here.

With regard to the documents, how should I respond to that? Document 103, Page 1 --

MR. BERNSTEIN: That is the indictment, Your Honor. We would ask --

THE COURT: Oh, that's the indict -- okay. You know something? Get the jury back.

MR. BERNSTEIN: Your Honor, before we bring them in --

THE COURT: Yeah.

MR. BERNSTEIN: -- there's another issue with the

8

indictment.  If you remember you've had to change it before you read it to them because it misstated the statute.  It says a federal agent rather than a covered person.

**MR. NICOLAYSEN:**  Yes it --

**MR. BERNSTEIN:**  That's another reason -- issue with the indictment.

**THE COURT:**  Well I mean in this case the covered person is the federal agent.

**MR. BERNSTEIN:**  Right but the statute doesn't read federal agent, it reads covered person and you changed it when you read the indictment to them.

**THE COURT:**  You mean I just read the indictment.

**MR. BERNSTEIN:**  You read it correctly.  The indictment you sent back it misstates -- with the statute it states the defendants followed a federal agent.

**THE COURT:**  But a federal agent, as the evidence showed in this case, was a covered person.

**MR. BERNSTEIN:**  But that's an element of the crime. That he has --

**THE COURT:**  And that was discussed in the jury instructions and in the arguments.  I don't see the point.

**MR. BERNSTEIN:**  Regardless, I would ask that you instruct the jury the indictment is not evidence.  They should not consider --

**THE COURT:**  I'm going to.  I'm going to --

MR. BERNSTEIN:  -- and rely on the evidence.

THE COURT:  Get the jury.

(Court and clerk confer)

Get them in here.

(Pause)

THE CLERK:  All rise for the jury.

(Jurors enter courtroom)

Please be seated.

THE COURT:  Good morning, members of the jury.  Thank you once again for your timeliness.

I received your note.  Number one, I think it was from -- I hope I said your name, Juror 7.  Is that the foreperson of the jury?  Mr. Atijera.  How do I say your name?

JUROR NUMBER 7:  Atijera.

THE COURT:  Atijera, yes.  And you've requested additional copies of the jury instructions and the indictment. For reasons that shouldn't concern you, I can't do what you have asked.  I've given you a copy of the jury instructions and the indictment.

Let me emphasize to you and it's not for me to tell you what to focus on or what not to focus on.  That's clearly within your province but I do want to emphasize to you as I have said before, the indictment is not evidence.  The indictment is just the way the case begins.  And the only reason it was given to you was because it will help you perhaps

10

in filling out the verdict form.  In other words, it's a guide to the questions in the verdict form.  Otherwise, it has absolutely no significance.

The jury instructions are significant and you have to follow those but it's my preference that if you have to consult the jury instructions as is your right, you do that as a juror. So be mindful of what I have said.  Don't look at the indictment as evidence because it's not.  The evidence you are to consider are the exhibits in the trial and the testimony.

Thank you.  You can resume your deliberations.

**THE CLERK:**  All rise for the jury.

**(Jurors exit courtroom)**

**THE COURT:**  I understood from my courtroom deputy that one of the lawyers wanted to make a motion for a mistrial. Did I hear that?

**MR. NICOLAYSEN:**  Your Honor, not a mistrial at this time but I do ask the Court to make further inquiry of Juror Number 1 in regard to the inquiry made at the end of the afternoon yesterday.  The purpose to find out if that juror shared her concerns with the other jurors because I believe if she did, it potentially contaminates the jury and then I would make a motion for a mistrial.  Because she was afraid and that was what concerned me and she was very clear on the record that she had fear.

**THE COURT:**  When -- what's the government's response?

11

MS. BORDER: Your Honor, the government would oppose. I think she was quite clear that she could be fair. Your Honor asked her --

THE COURT: But the -- I agree with that, that she said she could be fair and I thought that her answer was genuine but the question is, did she share her concerns about what was her fear with other members of the jury. That was more pointed.

MS. BORDER: Your Honor, the government would say it's irrelevant but if Your Honor's leaning that way, the government would not object to just having one ...

THE COURT: Bring her back here for a minute.

MR. BERNSTEIN: Your Honor, can I address one thing before we bring her in?

THE COURT: What's that?

MR. BERNSTEIN: On the proposed verdict form.

THE COURT: Yes.

MR. BERNSTEIN: Under my client, Sandra Samane, it lists three a/k/a's. They are only as a result of the government misspelling her name three times incorrectly. I think listing those a/k/a's makes it sound more nefarious or sinister.

THE COURT: Then I'll tell them to ignore the a/k/a's.

MR. BERNSTEIN: Could we just strike them from the --

12

THE COURT:  Well they've already seen them.  What good does it do to strike them?

MR. BERNSTEIN:  Okay.

THE COURT:  Yeah.  Bring her back here for a minute.

(Pause)

Ms. Saldibar, good morning.

JUROR NUMBER 1:  Good morning.

THE COURT:  Please relax.  Thank you for being here.  I hate to keep bringing you out here but I just want to ask you a simple question.  Are you relaxed?

JUROR NUMBER 1:  Yes, I am.

THE COURT:  Okay.  When you had that situation yesterday or the day before with someone saying hello to you or something, what did he say?

JUROR NUMBER 1:  He just said hey.

THE COURT:  Hey.

JUROR NUMBER 1:  Like outside.

THE COURT:  Yeah but did you share that concern with any other members of the jury?

JUROR NUMBER 1:  I think so, I did.

THE COURT:  All of them or some of them?

JUROR NUMBER 1:  Some of them.

THE COURT:  I see.  All right.  Get the whole jury back then.

Thank you, Ms. Saldibar.  You stay here.  You can

take your seat.  Thank you.

(Pause at 10:04 a.m.)

THE CLERK:  All rise for the jury.

**(Jurors enter courtroom)**

Please be seated.

THE COURT:  Thank you, members of the jury, for your cooperation.  I have one question to ask of you.

Yesterday or the day before, one member of the audience here had some contact with Juror Number 1, Ms. Saldibar, and said something in passing like, "hey," you know, nothing beyond that.  But I understand that it concerned her and I dealt with that but I asked her whether she mentioned that to anyone else.  And we can't have a jury that makes a decision based upon anything but the evidence.  And certainly as I instructed you, public opinion, fear, can't be part of the analysis.  I can assure you, given the admonitions I give you, I have given, that you are secure and safe.

Does anyone feel any apprehension that would prevent them from doing the function that I've outlined?

(No hands raised)

All right.  Then you can go back to your jury duties.

THE CLERK:  All rise for the jury.

**(Jurors exit courtroom)**

MS. CHOI:  Your Honor?

THE COURT:  Yes.

14

**MS. CHOI:** We would ask that Juror Number 1 be stricken for cause. She did not follow the Court's admonition to not talk to other jurors. And it's obvious that she was scared by someone who is associated or friends with the defendants. So we'd ask that she be replaced by an alternate.

**THE COURT:** All right.

**MR. BERNSTEIN:** Join.

**MR. NICOLAYSEN:** I will join in that, Your Honor, in lieu of a motion for a mistrial.

**THE COURT:** My view is that what was said to her was not a threatening comment. Nothing should have been said to her but it was hey or what's up or something like that. And she recognized the person who said it to be one of the supporters of the defendant in the audience. I questioned her. Her answers were in my view genuine. I've observed her demeanor. In my view there's no anxiety or any --

**THE CLERK:** (indisc.).

**THE COURT:** Yes. Oh, is that right?

**THE CLERK:** (indisc.).

**THE COURT:** Yeah. There's no anxiety or apprehension in her demeanor or her face.

**MS. CHOI:** And Your Honor, I think she took it as --

**THE COURT:** Why do you interrupt me all the time?

**MS. CHOI:** Sorry, I can't see when the Court --

**THE COURT:** You can hear my --

**MS. CHOI:** I can't see well, sorry.

**THE COURT:** You can hear me speaking.

Okay. And she answered my questions in my view honestly. If she shared any comment, it was a comment that was made which was not threatening. And so I don't see that the jury is tainted in any way. If the parties think it is you can make a motion for a mistrial.

**MR. NICOLAYSEN:** Your Honor, may we address the Court?

**THE COURT:** Yes.

**MR. NICOLAYSEN:** Shannon, you want to go first?

**MS. COIT:** Yes, thank you.

Your Honor, I think the issue is not that a threat was like intended or any or how we might see it but she obviously took it as a threat. She raised it twice. She informed the bailiff on the first day and then she raised it again yesterday so --

**THE COURT:** She didn't do it -- she raised it again yesterday only because I asked her about it and all she actually she -- she did say it twice but I dealt with it. And like I said, it wasn't threatening. I questioned her, she answered. She seems relaxed. She was smiling. She didn't seem at all nervous and I accept her answer. And then I questioned the jurors. If you think otherwise, make a motion for mistrial.

16

**MR. NICOLAYSEN:**  Your Honor, I do make a motion for a mistrial on behalf of Ms. Raygoza.  And allow me just briefly to state the basis.

Your Honor did what a court would do.  Reassured her that she's safe, reassured her the Court would deal severely with any repetition.  I very much respect the Court's approach.

However, she was afraid and she made it clear that she was afraid.  And in this case, threats are at the heart of the allegations in both counts.  So even if she's relaxed this morning, vis-à-vis Your Honor.  And you did put her at ease but that's the chemistry between her and the Court.  I'm still concerned about the chemistry between her and the defendants because to the degree she and now perhaps other members of the jury with whom she shared her experience associate our clients with members of the audience, that taints the jury.

**THE COURT:**  So --

**MR. NICOLAYSEN:**  And at the very least --

**THE COURT:**  So your motion is for a mistrial because at this point you think the entire jury is tainted.

**MR. NICOLAYSEN:**  Well I am concerned.  I'd prefer that she be excused, we use an alternate, and proceed with deliberations.  I'm prepared to accept that as an alternative. And I ask Your Honor to revisit that thinking but I don't think it's appropriate to simply treat the matter as entirely resolved.

17

THE COURT:  To me it's resolved.  What is the government's view?

MR. MPARE:  That's your position, Your Honor.  The government would adopt everything Your Honor said.

And in addition, now twice you've admonished Juror Number 1.  And beyond what is necessary, you brought the entire out --

THE COURT:  I didn't admonish her, I listened to her, I observed her, I asked her if she could be fair and she said in her own words, "I can be fair."

MR. MPARE:  Correct, Your Honor.

THE COURT:  And I also observed her during the jury selection so I think she will be at this point a fair and impartial juror.

MR. MPARE:  Correct, Your Honor.

THE COURT:  All right.  That's the --

MR. BERNSTEIN:  Your Honor, may I add something?

THE COURT:  (inaudible).

MR. BERNSTEIN:  Your Honor, may I be heard, Your Honor?

THE COURT:  (inaudible).

MR. BERNSTEIN:  (A), I want to join both the motions to re --

THE COURT:  Then join.

MR. BERNSTEIN:  But I want to add one additional

thing.  By you telling Juror Number 1 and then the juror panel as a whole that you can guarantee that they will be safe implies that there's a reason for them not to feel safe and that is another reason for a mistrial.

**MR. NICOLAYSEN:**  And I join in that argument, Your Honor.

**THE COURT:**  The motions are denied.

**MR. BERNSTEIN:**  Thank you, Your Honor.

**THE CLERK:**  All rise.  This court is in recess.

**(Recessed at 10:13 a.m.; reconvened at 1:22 p.m.)**

**(Outside the presence of the jury)**

**THE CLERK:**  Please be seated.

**THE COURT:**  ... with the parties and counsel.  We received Note Number 2, signed by the foreperson.

"We cannot come to a unanimous decision for the defendants on Counts 1 and 2."  Well that's the whole case.

They haven't been deliberating that long, it was less than an hour after the arguments yesterday and about three or four hours today, three hours.  So I'm going to give them -- call them back and give them a modified Allen Charge as approved by the Ninth Circuit and let them deliberate further.

So get the jury.

**(Pause)**

**THE CLERK:**  All rise for the jury.

**(Jurors enter courtroom)**

19

Please be seated.

**THE COURT:**  Good afternoon, members of the jury.

I did receive your Note Number 2 and in that light I have an additional instruction to give to you.

Members of the jury, you have reported that you have been unable to reach a unanimous verdict in this case.  I have decided to suggest a few additional thoughts to you.

As jurors you have a duty to discuss the case with one another and to deliberate in an effort to reach a unanimous verdict if each of you can do so without violating your individual judgment and conscious.  Each of you must decide the case for yourself but you should do so only after you've considered the evidence impartially with your fellow jurors.

During your deliberations you should not hesitate to reexamine your own views and change your opinion if you become persuaded that it is wrong.  You should not however come to an honest belief as to the weight and effect of the evidence solely because of the opinions of your fellow jurors or for the mere purpose of returning a verdict.

I remind you that in your deliberations you are to consider the instructions that I've given you as a whole and should not single out some or any -- single out any part of the instruction, including this one, and ignore others.  They are all equally important.  What I have said is not meant to rush you or pressure you into agreeing on a verdict.  Take as much

time as you need to discuss things.  There is no hurry.

I ask that you now return to the jury room and continue your deliberations with these additional comments of mine.  You may continue your deliberations.

THE CLERK:  All rise for the jury.

(Jurors exit courtroom)

(Court in recess at 1:27 p.m.; reconvened at 6:06 p.m.)

(Call to Order)

THE COURT:  We received Note 3, signed by the foreperson saying that they have reached unanimous verdict.

The jury.

THE CLERK:  Okay.

(Pause)

All rise for the jury.

(Jurors enter courtroom)

Please be seated.

THE COURT:  I got a note from the foreperson, Mr. Atijera, saying the jury had reached a verdict.  Could you hand it up to my courtroom deputy, thank you.

(Verdict tendered to Clerk)

The verdict on Count 1 as to Raygoza, not guilty.

Count 2, not guilty.

Count 3, not guilty.

As to Raygoza --

MR. BERNSTEIN:  There was no Count 3, Your Honor.

21

MR. NICOLAYSEN:  There was no Count 3, Your Honor.

THE COURT:  Count 1, I said, Count 1, yeah.  Count 1. I said Count 1.

And Count 2, guilty as to Raygoza.

Guilty, as to Brown.

Not guilty as to Samane.

It's signed February 27, '26, signed by Richie Atijera, foreperson of the jury.

Is that the verdict, so say each of you?

(No audible response)

Does the defendant wish the jury polled?

MR. NICOLAYSEN:  Yes.

MR. BERNSTEIN:  Your Honor, I'm just not clear on Ms. Samane.  Was it not guilty on both counts?

THE COURT:  Yes.

MR. BERNSTEIN:  Okay.  I'm just unsure if I heard it correctly.

THE COURT:  Yeah, yes.

Okay, poll the jury, Daniel.

THE CLERK:  Starting with the juror in the first seat in the first row.

Juror Number 1, is the verdict as presented and read your verdict?

JUROR NUMBER 1:  (inaudible).

THE CLERK:  Say yes or no.

22

**JUROR NUMBER 1:**  Yes.

**THE CLERK:**  Juror Number 2, is the verdict as presented and read your verdict?

**JUROR NUMBER 2:**  Yes.

**THE CLERK:**  Juror Number 3, is the verdict as presented and read your verdict?

**JUROR NUMBER 3:**  Yes.

**THE CLERK:**  Juror Number 4, is the verdict as presented and read your verdict?

**JUROR NUMBER 4:**  Yes.

**THE CLERK:**  Juror Number 5, is the verdict as presented and read your verdict?

**JUROR NUMBER 5:**  Yes.

**THE CLERK:**  Juror Number 6, is the verdict as presented and read your verdict?

**JUROR NUMBER 6:**  Yes.

**THE CLERK:**  Juror Number 7, is the verdict as presented and read your verdict?

**JUROR NUMBER 7:**  Yes.

**THE CLERK:**  Juror Number 8, is the verdict as presented and read your verdict?

**JUROR NUMBER 8:**  Yes.

**THE CLERK:**  Juror Number 9, is the verdict as presented and read your verdict?

**JUROR NUMBER 9:**  Yes.

23

THE CLERK:  Juror Number 10, is the verdict as presented and read your verdict?

JUROR NUMBER 10:  Yes.

THE CLERK:  Juror Number 11, is the verdict as presented and read your verdict?

JUROR NUMBER 11:  (inaudible).

THE CLERK:  Yes, you.  No, 11 -- your seat 11.

JUROR NUMBER 11:  Yes.

THE CLERK:  And Juror Number 12, is the verdict as presented and read your verdict?

JUROR NUMBER 12:  Yes.

THE CLERK:  Thank you.

THE COURT:  Okay.  Members of the jury, let me thank you for your participation, your punctuality and your careful attention to the evidence in the case.  You were very a conscientious juror and the Court appreciates that.

I want to say something to you now that you have reached a verdict.  Some of you may have some questions about the confidentiality of your proceedings.

You are free to discuss the case now with anyone you choose.  By the same token, I would advise you that you are under no obligation whatsoever to discuss the case with any person.  It's your choice.  If someone wants to talk to you about the case, you can talk to them.  You may want to talk to the lawyers or may not.  And if you don't want to, you can

politely say you don't want to or you do.

If you do decide to discuss the case, bear in mind that the other jurors fully and freely stated their opinions with the understanding that they were being expressed in confidence.  Please respect the privacy of the views of the other jurors.  So that's your choice.

Again, thank you very much and have a pleasant weekend and I hope this has been an interesting and important experience for you.  Thank you-all.

**THE CLERK:**  All rise for the jury.

**(Jurors exit courtroom)**

**THE COURT:**  You may be seated if you'd like.

**MR. BERNSTEIN:**  We wanted to get a forthwith release.  It's late in the day and I don't know how --

**THE COURT:**  Just wait for a minute, would you?

Where's Daniel.

**(Court and law clerk confer; pause)**

My law clerk reminds me that the jury verdict says clearly that on Count 1, all the defendants are not guilty.  I may have looked at the verdict form 1, 2 and 3 and called them counts but they're all not guilty as to Count 1.

Where's Dan -- oh Daniel, okay.

**MR. NICOLAYSEN:**  And Your Honor, Count 2, can we just confirm guilty for Raygoza, not guilty for Samane and as to Ashleigh Brown.

25

THE COURT:  Guilty.

MR. NICOLAYSEN:  I see.

THE COURT:  Which defendant was in custody?

MR. BERNSTEIN:  My client, Ms. Samane.

THE COURT:  Okay well she's ordered released forthwith.

MR. BERNSTEIN:  Will they be released directly from the courthouse?

THE COURT:  Can't she be released here or whatever the procedure is, what is it?

(Pause; background speaking)

THE COURT:  The marshal tells me that there are some release forms that have to be signed and taken care of.  The deputy clerk will take care of that.

MR. BERNSTEIN:  Thank you.  I appreciate that, Your Honor.  Thank you, Daniel.

THE COURT:  And then with regard to the other defendants, Daniel, we have to set a date for sentencing.

THE CLERK:  Yes.  Sentencing will be held Monday, June 8th at 11:00 a.m.

All rise.  This court is adjourned.

(Proceeding adjourned at 6:17 p.m.)

EXCEPTIONAL REPORTING SERVICES, INC

26

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____          **March 17, 2026**

        **Signed**                                **Dated**

*TONI HUDSON, TRANSCRIBER*