AMY M. KARLIN (Bar No. 150016)
Interim Federal Public Defender
Erica Choi (Bar No. 302351)
(E-Mail: Erica_Choi@fd.org)
Deputy Federal Public Defender
SHANNON COIT (Bar No. 298694)
(E-Mail: shannon_coit@fd.org)
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
ASHLEIGH BROWN

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

UNITED STATES OF AMERICA,

Plaintiff,

v.

ASHLEIGH BROWN,

Defendant.

Case No. 2:25-CR-780-SVW-2

**DEFENDANT ASHLEIGH BROWN'S OBJECTIONS TO PSR AND SENTENCING POSITION; EXHIBITS**

**Sentencing Hearing: September 28, 2026. at 11:00 a.m.**

The Court has taken Ashleigh Brown's Motion for Judgment of Acquittal or for a New Trial under submission. In the event the motions are denied, and a sentencing hearing is necessary, Ms. Brown submits her Sentencing Position.

Respectfully submitted,

AMY M. KARLIN
Interim Federal Public Defender

DATED: September 21, 2026 By */s/ Erica Choi*

ERICA CHOI
SHANNON COIT
Deputy Federal Public Defender
Attorneys for ASHLEIGH BROWN

# TABLE OF CONTENTS

Page


I. INTRODUCTION .......... 1

II. OBJECTIONS TO PSR .......... 2

A. The "official victim" enhancement is not appropriate. .......... 2

B. Factual Objections to PSR .......... 3

1. PSR ¶ 15 .......... 3

2. PSR ¶ 19 .......... 3

3. PSR ¶ 39 .......... 3

4. PSR ¶ 40 .......... 4

5. PSR ¶¶ 40, 31 .......... 4

6. PSR ¶ 44 .......... 4

III. SENTENCING UNDER 18 U.S.C. § 3553(A) .......... 5

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Gall v. United*,
552 U.S. 38, 49-50 (2007) .......... 4

*Kimbrough v. United States*,
552 U.S. 85 (2007) .......... 4

*Koon v. United States*,
518 U.S. 81 (1996) .......... 4

*Rita v. United States*,
551 U.S. 335 (2007) .......... 4

*United States v. Booker*,
543 U.S. 220 (2005) .......... 4

*United States v. Carty*,
520 F.3d 984 (9th Cir. 2008) .......... 4

*Williams v. New York*,
337 U.S. 241 (1949) .......... 4

**Federal Statutes**

18 U.S.C. § 3553(A) .......... 4

U.S.S.G. § 3A1.2(a) .......... 1

**Other Authorities**

First Amendment .......... 1, 3

# I. INTRODUCTION

With the intent to film and protest ICE enforcement, Ms. Brown followed an ICE vehicle leaving an ICE building. Unbeknownst to her, ICE Deportation Officer Rogelio Huitzilin was headed home early in his work vehicle. It was at 12:30 p.m. on a weekday.

Ms. Brown followed Officer Huitzilin into a neighborhood in Baldwin Park. Believing she was witnessing ICE enforcement, she parked her car in a nearby driveway. She stood by her car, took out her phone, and began livestreaming on the "ice_out_ofLA" Instagram account.

Ms. Brown stayed by her car. She did not confront Officer Huitzilin or his family. She did not yell at them, call them names, or use profanities. She stood quietly and filmed. When Jessica Herrera (Huitzilin's wife) told Ms. Brown they were *not* ICE, Ms. Brown stopped filming.

Within minutes of determining that no ICE raid was occurring, Ms. Brown got in her vehicle and tried to leave. But she was not able to do so because Ms. Herrera's Suburban had blocked her in, and Officer Huitzilin then sat on the hood of her car. Shortly after that, Baldwin Park Police officers arrived shortly and Ms. Brown was detained.

While detained by BPPD, Ms. Brown resumed livestreaming her encounter with police. The officers acknowledged her First Amendment right to record. She announced, "Now everyone's going to know the Baldwin Park Police Department support ICE." She told viewers to "come on down and support the people" against her wrongful detention *by Baldwin Park police*. And once she was free to leave, Ms. Brown never returned to the street or otherwise contacted Officer Huitzilin or his family again.

A jury convicted Ms. Brown of cyberstalking. For the reasons explained herein, a sentence of time served and supervised release is reasonable and appropriate in this case.

## II. OBJECTIONS TO PSR

### A. The "official victim" enhancement is not appropriate.

The official victim enhancement only applies where (1) the victim was a government officer or employee, or family member, and (2) "the offense of conviction was motivated by such status." U.S.S.G. § 3A1.2(a).

Ms. Brown accidentally followed Officer Huitzilin home. She stopped recording once Jessica Herrera said they were not ICE. She only resumed recording her during her interaction with Baldwin Park Police officers, who made clear that they had no issue with her filming.

A jury convicted Ms. Brown of cyberstalking based on two or more acts evidencing a continuity of purpose. It is unknown which "acts" the jury's conviction relied on. Ms. Brown did follow Officer Huitzilin because he was in an ICE vehicle.[1] But no other "act" can be said to have been motivated by Huitzilin's status as a government employee.

The claim that Ms. Brown was motivated by Huitzilin's official status is difficult to reconcile with the government's argument at trial that the reason this was a crime was because Ms. Brown went beyond protesting a public official and was instead harassing an off-duty private citizen. *See* Trial Tr. Day 1 at 26-27 ("The evidence will show that the defendants saw Mr. Reyes leave his government vehicle. He was not in uniform. He was not on duty. . . . The defendants saw Mr. Reyes get into his personal vehicle with his family, but the defendants didn't leave."); Trial Tr. Day 3 at 179-80 ("This case isn't about ICE. It's about Mr. Reyes. It's about what Defendants did to Mr. Reyes at home, away from anything the Defendants disagreed with about Mr. Reyes' work.")

---

[1] As explained in Ms. Brown's post-trial motions, the act of following Officer Huitzilin while he was driving his official vehicle cannot be a valid basis for conviction because it is First Amendment-protected activity. And beyond that, Ms. Brown did not know that Officer Huitzilin, specifically, would be in that vehicle. As the video shows, she and others in the car assumed multiple ICE officers were in the vehicle heading to an ICE enforcement action.

Ms. Brown attempted follow an ICE vehicle to an ICE raid for the purpose of protesting and engaging in community rapid response. Under these facts, the official victim enhancement should not apply.

### B. Factual Objections to PSR

The PSR contains several factual inaccuracies which must be corrected.

#### 1. PSR ¶ 15

The PSR states "Raygoza shouted to bystanders while livestreaming on Instagram that their 'neighbor is ICE,' 'la migra lives here,' and 'ICE lives on your street and you should know.' **Brown yelled similar phrases**, and Raygoza threatened to 'pop' the victim.'" PSR ¶ 15 (emphasis added). Ms. Brown did not yell similar phrases.[2] She did not raise her voice. She did not disparage Officer Huitzilin or his family. She stood by her car and recorded.

The PSR claims "Brown did not stop recording, even after R.H.'s wife asked her to stop because she did not want her children recorded." PSR ¶ 15. That is contrary to the video evidence, and Ms. Herrera's trial testimony. Ms. Herrera testified that Ms. Brown stopped recording when she asked her to. Trial Tr. Day 2 at 218, 240. That is precisely what happened.

#### 2. PSR ¶ 19

The PSR states that "defendants repeatedly accosted and called [Jessica Herrera] a 'white bitch.'" PSR ¶ 19. Ms. Brown did not accost Ms. Herrera, call her names, or disparage her in any way. Nor did she encourage anyone else to do so.

#### 3. PSR ¶ 39

The PSR misleadingly states Ms. Brown told viewers to "come on down" to R.H.'s home to harass him. *See* PSR ¶ 39. That was not her statement. Ms. Brown told viewers to "come on down [**to**] **support the people**" to protest against Baldwin Park

---

[2] The third co-defendant, Ms. Samame, yelled that Officer Huitzilin was a "piece of shit," a "fucking idiot" and a "race traitor." ECF 103 at 5. Ms. Samame was acquitted on both counts.

Police, for detaining protestors exercising their First Amendment rights. (USAO BWC 008 at 32:54-33:02 ("So come on down. Come on down support the people. This isn't the LAPD. This is the Baldwin Park PD."))

In addition, "defendmesoamericanculture" is not one of Ms. Brown's associated Instagram accounts. That account belonged to Cynthia Raygoza. Trial Tr. Day 2 at 58.

**4. PSR ¶ 40**

The PSR claims Ms. Brown "refused to give her first name to a Baldwin Park police officer because she was livestreaming." PSR ¶ 40. That is misleading.

Ms. Brown was under no obligation to identify herself at the time. She was detained pending an investigation into Ms. Herrera's 911 call. She was ultimately released.

The PSR fails to include that Ms. Brown did give her true legal name to police officers. Trial Tr. Day 3 at 47. She also provided her identification and information about her vehicle registration. USAO BWC 17 at 3:11. Ms. Brown did not obstruct BPPD's investigation.

**5. PSR ¶ 40**

The PSR states 4-5 masked individuals "appeared outside R.H.'s home." PSR ¶ 40. No one appeared outside R.H.'s home. No one went to R.H.'s home. His home address was never announced.[3]

The 4-5 other protestors who arrived interacted with BPPD in the middle of the street. They, too, were exercising their First Amendment rights. They were not arrested or told to stop speaking. None of them approached Officer Huirztlin, his family, or his house.

**6. PSR ¶ 44**

The PSR seems to suggest Ms. Brown was responsible for Ms. Raygoza's conduct in leaving California and hiding from law enforcement. Ms. Brown was in

---

[3] The Huitzilin home address was never announced until trial, when the government elicited testimony from the case agent about Officer Huitzilin's address.

custody after her arrest. She had nothing to do with Ms. Raygoza's decision to leave California. This entire paragraph should be removed from Ms. Brown's PSR.

## III. SENTENCING UNDER 18 U.S.C. § 3553(A)

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). Underlying this tradition is the principal that "the punishment should fit the offender and not merely the crime." *Williams v. New York*, 337 U.S. 241, 247 (1949).

The Supreme Court in *Kimbrough v. United States*, 552 U.S. 85, 101 (2007), noted that the "overarching provision" in section 3553(a), as modified by *United States v. Booker*, 543 U.S. 220 (2005), is the requirement that courts "impose a sentence sufficient, but not greater than necessary to accomplish the goals of sentencing." Although the United States Sentencing Guidelines are the "starting point and the initial benchmark," the Court "may not presume that the Guideline range is reasonable" and "must make an individualized assessment based on the facts presented." *Gall v. United States*, 552 U.S. 38, 49-50 (2007); *Rita v. United States*, 551 U.S. 335 (2007). Accordingly, the Ninth Circuit has found that the Guidelines range should not be given greater weight than the section 3553 factors. *See United States v. Carty*, 520 F.3d 984, 993-994 (9th Cir. 2008).

Despite the challenges of growing up in the foster youth system, and the tragic loss of her brother, mother, and sister in one year (PSR ¶ 54, 59, 64), Ms. Brown accomplished much in her life. She has college degrees. PSR ¶¶ 75-76. She is a mother to two minor children. She is a wife to a military veteran. She is a powwow dancer, a political activist, and a community organizer.

Ms. Brown never intended to stalk Officer Huitzilin or his family. She intended to exercise her constitutional rights to witness and alert community members about ICE enforcement. She stopped recording when Ms. Herrera asked her to, and she tried to

leave the neighborhood once she realized no ICE enforcement was happening. She had no vendetta against Officer Huitzilin or his family personally.

As soon as Ms. Brown was free to leave, she left. And she never returned. She never spoke about Officer Huitzilin publicly, never reposted, never told viewers to harass the ICE officer where he lived. Officer Huitzilin and some of his family members decided to move houses. Ms. Brown never intended for them to feel that would be necessary.

A custodial sentence is not warranted. Ms. Brown has no criminal history. She is a college-educated woman and a mother of two young children. She is still grieving the tragic passing of her family members. She ordinarily works as a consultant and a Native American seamstress. A felony conviction is already significant punishment for someone who has otherwise lived a law-abiding life.

Moreover, Ms. Brown already spent two months in pretrial custody. She has spent nearly one year on home confinement with stringent conditions, which has been difficult while taking care of an active toddler and teenager. Under the circumstances, a sentence of time served followed by supervised release is sufficient, but not greater than necessary, to achieve justice.

Respectfully submitted,

AMY KARLIN
Interim Federal Public Defender

DATED: September 21, 2026 By */s/ Erica Choi*

ERICA CHOI
SHANNON COIT
Deputy Federal Public Defenders
Attorney for ASHLEIGH BROWN

## PROOF OF SERVICE

I, **Veronica Do**, declare that I am a resident or employed in Orange County, California; that my business address is the Office of the Federal Public Defender, 411 West Fourth Street, Suite 7110, Santa Ana, California 92701-4598, Telephone No. (714) 338-4500; that I am over the age of eighteen years; that I am not a party to the action entitled above; that I am employed by the Federal Public Defender for the Central District of California, who is a member of the Bar of the State of California, and at whose direction I served a copy of the attached **DEFENDANT ASHLEIGH BROWN'S OBJECTIONS TO PSR AND SENTENCING POSITION; EXHIBITS** on the following individual(s) by:

[ ] Placing same in a sealed envelope for collection and interoffice delivery addressed as follows:

[ ] Placing same in an envelope for hand delivery addressed as follows:

[ ] Placing same in a sealed envelope for collection and mailing via the United States Post Office addressed as follows:

[ ] Faxing same via facsimile machine addressed as follows:

**VIA E-MAIL:**
**Michelle Wang, USPO**
**Michelle_Wang@cacp.uscourts.gov**

This proof of service is executed at Santa Ana, California, on **September 21, 2026**.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

*/s/ Veronica Do* .
**VERONICA DO**